**SALVAGE PROCESS CORPORATION et al. v. ACME TANK CLEANING PROCESS CORPORATION et al.**

**No. 7974.**

District Court, E. D. New York.

July 24, 1936.

Darby & Darby, of New York City (Samuel E. Darby, Jr., of New York City, of counsel), for plaintiffs.

W. H. Swenarton, of New York City, for defendant Acme Tank Cleaning Process Corporation.

GALSTON, District Judge.

This is a motion for a preliminary injunction which seeks to restrain the defendants from infringement of letters patent Nos. 1,405,173 and 1,480,482, to Hervey J. Wheeler, the former granted January 31, 1922, the latter January 8, 1924; also patents Nos. 1,894,234 and 1,964,726 to Gunnar C. Engstrand, the former issued January 10, 1933, and the latter July 3, 1934. On the argument of the motion, the second Wheeler patent, No. 1,480,482, was withdrawn from consideration.

All of these patents relate to pumping apparatus and means for lifting and transferring material from oil-tanks of oil-burning vessels overside.

The patent to Wheeler, No. 1,405,173, has been before this court in two cases. H. J. Wheeler Salvage Co., Inc., v. Rinelli & Guardino, Inc., et al., 295 F. 717; and Salvage Process Co. v. James Shewan & Sons, Inc., et al., 26 F.(2d) 258. In both these cases Judge Campbell held the patent valid and infringed. On this motion only claim 1 of this Wheeler patent is involved. Validity, for the purposes of the motion, is conceded; no new prior art being offered. That leaves for consideration then only the question of infringement.

Claim 1 is for a method and reads as follows: "The herein described method of transferring viscous material directly from the interior of a maritime vessel to an overside receptacle, which consists in creating a high vacuum in said receptacle to thereby suck such material to an elevation and deliver it directly into said receptacle, and admitting air in small quantities into the suction end of the conveying pipe to emulsify said material."

The corporate defendant, the only defendant served, resists the claim of infringement, contending that it does not em-

ploy a high vacuum in an overside receptacle; and contends that its method is the so-called bubble and piston method of the prior art, and is employed with a low vacuum never over twelve inches in any part of the line.

Though the claim refers to "a high vacuum in said receptacle," there is no definite statement as to what a high "vacuum" is. The term must be regarded as relative. The essential principle of the invention is found in the specification wherein it is stated by the inventor that: "I have discovered that with a combined vacuum-suction and syphon action, this and other materials may be raised and delivered over-side through a hose, thus permitting the operation of cleaning the oil-tanks to be quickly and economically performed while avoiding the discomfort and dirt attending the usual operation."

▮ Plaintiff points out, and it would seem to me quite properly, that if the vacuum in the line ranges from eight to twelve inches in the line, in order that the apparatus be operative it is necessary that there be a greater degree of vacuum in the receptacle. Otherwise the flow would be from the receiver into the line and not from the line into the receiver. If that be so, then the degree of vacuum in the receptacle on any reasonable understanding must come within the terminology of the claim of the specification. I reach this conclusion despite the fact that there is a considerable steam pressure employed in the defendant's operation. This claim having been twice sustained and the invention having brought about a complete change in the method of cleaning oil-tanks of oil-burning vessels, the patentee is entitled to a broad construction.

The contention concerning the lack of emulsification was disposed of by Judge Campbell when essentially the same question was raised in Salvage Process Co. v. James Shewan & Sons, Inc., supra. The admission of air into the suction nozzle by the defendant for the purpose of effecting emulsification of the sludge is not categorically denied.

The affidavit of Olsson, vice president and superintendent of defendant, refers to a pending application for letters patent. A reading of that application reveals that in describing the operation of his invention, filed September 21, 1935, and allowed January 30, 1936, he states: "The intake end of the transmission is now dipped into the material to be pumped, care being taken not to completely emerse the end, but allowing atmospheric air to enter into the line."

▮ Of course, the fact that Olsson describes that as his method of operation in an application for letters patent is not proof that such is the defendant's method. On this motion, however, it may be considered together with all the other facts in the affidavits, and weight attached thereto in the absence of a categorical denial by the defendant to the prima facie showing made by the plaintiff.

Judge Campbell, in Salvage Process Co. v. James Shewan & Sons, Inc., supra, found this method to be the equivalent of "admitting air in small quantities into the suction end of the conveying pipe to emulsify said material."

▮ Though the Engstrand patents have not been adjudicated, the question of validity has not been raised on this motion. With respect to such unadjudicated patents, proof of infringement to support a preliminary injunction must be exceedingly clear. Errors were made in the original drawings submitted with the motion papers both in respect to the dimensions of the annular steam-jet in the figure marked, "Detail A" of the booster syphon, and also in respect to the position of the booster syphon. The latter would appear to be obviously a draftsman's error, but as to the first error noted, speculation is made necessary in order to find beyond a reasonable doubt that infringement exists of some of the claims in issue.

The Parker affidavit, attempting to correct the misstatements in the Jacovache affidavit, asserts: "However, deponent is advised that said opening is 3/16″ at the outlet end and 1/32″ at the inner opening. In other words it is a nozzle that expands from 1/32″ to approximately 3/16″." It is to be noted that the Parker affidavit fails to state how Parker was so "advised" and on what he bases his assertion. In these circumstances calculations cannot be made with accuracy in respect to claims 2, 3, and 4 of patent No. 1,964,726. Claim 2 defines in percentage the aggregate area of the steam jet nozzle to the discharge line; claims 3 and 4 add additional limitation by reference to the aggregate area of the steam jet nozzle to the **core** passage through the suction pump.

On the other hand, the method claim 5 of patent No. 1,964,726 is clearly infringed, as are claims 1 and 2 of Engstrand patent, No. 1,894,234.

The motion for a preliminary injunction is accordingly granted. Settle order on notice. The order will provide for the filing of a bond by the plaintiff in the usual form to cover possible damage to the defendants arising out of the granting of this injunction. With such proposed order affidavits may be submitted concerning the amount of such bond.